UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EDWARD V. SAUNDERS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:03-cv-1131-DFH-TAB |
| | ) | |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA (UAW), | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Edward V. Saunders, Jr. has sued the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW," "the Union," or "the International Union") for breach of its duty of fair representation in connection with UAW's handling of a grievance concerning Saunders' termination from General Motors Corporation ("GM"). The UAW has moved for summary judgment, arguing that Saunders' suit is barred because he failed to exhaust internal union appeal procedures that could have reinstated or resolved his grievance. Alternatively, UAW argues that it did not breach its duty of fair representation because none of its actions were arbitrary, discriminatory, or in bad faith. The undisputed facts show that the UAW is correct on both issues, so its motion for summary judgment is granted.

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment should be granted only where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only genuine disputes over material facts can prevent a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the non-moving party. See *Anderson*, 477 U.S. at 255; *Conley v. Village of Bedford Park*, 215 F.3d 703, 708 (7th Cir. 2000). However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Anderson*, 477 U.S. at 251-52; *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

*Background*

I.    *Evidence Cited by the Parties*

At the outset, the court must address UAW's objection to Saunders' brief. UAW has requested that Saunders' "Statement of Facts in Dispute" be stricken in its entirety.  UAW argues that Saunders failed to support many of his factual assertions with citations to evidence in the record.  UAW also argues that even where Saunders has cited the record, the evidence he cites has not been properly authenticated or does not provide the support he claims.  UAW requests that the court adopt its proposed "Statement of Material Facts Not in Dispute" as existing without controversy.

Rule 56(e) of the Federal Rules of Civil Procedure states that a party opposing summary judgment may not rest upon mere allegations or denials in his pleadings but must set forth specific facts, supported by admissible evidence, showing a genuine issue for trial.  Local Rule 56.1(b) requires a party responding to a summary judgment motion to include a "Statement of Material Facts in Dispute" with appropriate citation to the relevant record materials.  A non-moving party's failure to comply with Local Rule 56.1 permits the court to assume that the moving party's stated facts exist without controversy so long as they are supported by admissible evidence.  See S.D. Ind. L.R. 56.1(e).

Although Saunders' brief does not comply with the Local Rules in many respects, the court declines to strike his "Statement of Material Facts in Dispute" in its entirety.   UAW has offered the majority of its evidence in the form of documents attached to an affidavit by Charles Coy, the International Union Representative assigned to Saunders' grievance at step four of the grievance process.   Coy testified that he reviewed this documentation as part of his investigation into Saunders' grievance, but he did not have any personal involvement in the investigation until February 2002.

In his brief, Saunders questions the "allegedly elaborate" steps taken by UAW on his behalf from May 2001 through February 2002.  Saunders argues that UAW's timeline of events is supported by "little back up documentation" other than a "self-serving declaration" by Coy.  Saunders' criticism does not amount to an admissibility challenge, however, and he has offered no evidence of his own to dispute UAW's account of the events.

The court has noted where there are genuine disputed issues of fact between the parties. Although much of UAW's evidence would be inadmissible at trial in its current form, the court has considered this evidence because it is the only evidence before the court with respect to many of the events in question, and Saunders has not objected to its admissibility.  Similarly, the court will consider plaintiff's asserted facts where they are supported by the evidence in the record.

II.     *Facts For Summary Judgment*

The following facts are undisputed or reflect the evidence in the light reasonably most favorable to Saunders.  Saunders began working at the General Motors stamping plant in Marion, Indiana in 1963.  Saunders Dep. at 5.  Throughout his employment at the plant, Saunders was a member of UAW and its Local Union 977 ("the Local Union").  *Id.* at 10.  At the time of his termination in March 2001, Saunders worked as a tow motor driver.  *Id.* at 5-6.

Saunders testified that he was threatened and assaulted by co-worker John Hollars and others on several occasions from September 2000 to March 2001.  At times, his forklift and automobile were vandalized.  Saunders Dep. at 25-27, 42.  In October 2000, Saunders filed a discrimination charge with the Indiana Civil Rights Commission.  See Pl. Ex. 8.[1]

On March 6, 2001, Saunders was involved in a dispute with Hollars and co-worker Jack Bryant.  Saunders claims that Hollars threatened him with a knife.  Hollars and Bryant both filed statements with the plant security office claiming that Saunders had threatened Hollars with his knife.  Coy Dec. ¶ 28, Ex. 4.

---

[1]Saunders has submitted his own notes recounting the long history of his conflicts with co-workers.  See Pl. Ex. 6.  Although Saunders characterized this exhibit as a "declaration," his statement is unsworn and therefore inadmissible as hearsay.  The court has not considered it for purposes of UAW's motion.

Saunders reported the incident to UAW committeeman Bob Colburn. Colburn claimed that Saunders told him that if the union would not help him, he would bring his .44 or .45 caliber firearm to work and take care of the situation himself.  Coy Dec. ¶ 31, Ex. 6.  Saunders denies ever making this statement. Colburn asked Saunders to file a statement with plant security, but Saunders said he was too distraught to do so.  Coy Dec. ¶ 32, Ex. 6.  After speaking with Saunders, Colburn contacted Don McCormick in GM's labor relations department and told him there was a gun threat at the plant.  Coy Dec. ¶ 35, Ex. 6.

Dennis Schuth, the alternate UAW committeeman, said that he heard Saunders make the gun statement to Colburn.  Coy Dec. ¶ 33, Ex. 7.  A female co-worker on the floor told McCormick that Saunders also had spoken with her and another employee about the incident involving Hollars and Bryant.  Coy Dec. ¶¶ 34, 36, Ex. 6.  She told McCormick that Saunders made a similar statement to them about bringing a gun to work.

Saunders attended a disciplinary interview on March 7th.  Coy Dec. ¶¶ 37-38, Ex. 5.  McCormick, GM general supervisor of labor relations Mark Munger, and Local Union chairman Jim Jenkins also attended.  During the meeting, Saunders named several persons who he claimed had witnessed his mistreatment by Hollars and his conversation with Colburn.  Pl. Ex. 12 at 2.  Saunders was suspended pending further investigation.  Coy Dec. ¶ 39, Ex. 9.

On March 8th, GM and Union representatives met with the Marion Police Department to discuss Saunders and approaches for handling potentially violent behavior.  Coy Dec. ¶ 41, Ex. 11.  That same day, GM informed Saunders by letter that his suspension had been converted into a discharge.  Coy Dec. ¶ 42, Ex. 12.

The collective bargaining agreement in effect between GM and UAW establishes a four-step grievance procedure.  Coy Dec. ¶¶ 6-9, Ex. 1 ("CBA").  Grievances involving a discharge are handled in accordance with this procedure.  Coy Dec. ¶ 11.  Step one requires that an employee first present his grievance to a company supervisor.  Coy Dec. ¶ 12, CBA ¶ 28.  At step two, a written grievance is forwarded to local plant management and the Local Union chairman.  Coy Dec. ¶ 13, CBA ¶ 31.

On March 9th, the Local Union filed a written grievance protesting Saunders' discharge pursuant to step two of the grievance procedure.  Coy Dec. ¶ 43, Ex. 13.  On May 31st, local plant management issued a written decision denying Saunders' grievance.  Coy Dec. ¶ 44, Ex. 14.  GM concluded that Saunders' discharge was justified because his alleged misconduct was corroborated by signed statements and eyewitness reports of co-workers.

On June 20, 2001, Jenkins provided GM with a "Notice of Unadjusted Grievance" pursuant to step three of the grievance procedure.  Coy Dec. ¶ 45, Ex.

15.  GM and Jenkins also exchanged "Statements of Unadjusted Grievance."  Coy Dec. ¶ 46, Ex. 16.

On July 18, 2001, UAW's Regional Director Terry Thurman notified GM of his decision to appeal Saunders' grievance to the Appeal Committee at step three.  Coy Dec. ¶ 47, Ex. 17.  A hearing was held before the Appeal Committee on February 8, 2002.  Coy Dec. ¶ 48, Ex. 18.  GM again denied Saunders' grievance.  Coy Dec. ¶ 49, Ex. 19.

Jenkins asked Thurman to appeal Saunders' grievance to step four.  Coy Dec. ¶ 50, Ex. 20.  Step four calls for a final and binding decision by an impartial umpire.  CBA ¶ 53.  On February 22, 2002, Thurman sent a "Notice of Appeal" to GM.  Coy Dec. ¶¶ 51-52, Exs. 21 & 22.

Charles Coy was assigned as the International Union Representative responsible for handling Saunders' grievance at step four.  Coy Dec. ¶ 53.  As the International Union Representative, Coy was responsible for deciding whether Saunders' grievance had sufficient merit to be arbitrated before the umpire or whether it should be settled or withdrawn.  *Id.* ¶ 20.

Neither party has presented evidence that any additional steps were taken until almost eighteen months later.  Saunders argues in his brief that he "made numerous calls" and "sent several letters" to UAW during this time, but he has not

cited any evidence to support this assertion.  On August 5, 2003, Saunders and then-counsel Jerald Miller filed a "Verified Complaint for Permission to File Suit Against Labor Union for Failure to Produce Records" in this court.  Saunders sought the disclosure of records and information related to UAW's representation of him in the grievance process.  At the November 17, 2003 initial pretrial conference, the parties agreed to close the case administratively because Saunders' grievance was still pending in step four and had not yet been before an arbitrator or umpire.  On November 20, 2003, the magistrate judge ordered that the case be administratively closed without prejudice to either party.  See Docket No. 17.

On December 8, 2003, Miller withdrew as Saunders' counsel of record.  See Pl. Ex. 4.  On or about February 24, 2004, Saunders retained his current counsel, Ted Minch.  Following Saunders' retention of Minch as counsel, Coy reviewed the documentation associated with Saunders' grievance and performed a two-day on-site investigation.  Coy contacted Saunders directly to meet with him.  Saunders reported this contact to Minch, who then arranged a meeting for all three of them at the Local Union office on April 6, 2004.  Coy Dec. ¶ 56.

At the meeting, Coy asked Saunders for his version of the events that occurred on March 6, 2001.  Coy Dec. ¶ 57.  Saunders once again denied making the threat attributed to him, but he had no witnesses to support his version of the

events.  *Id.* ¶ 58.  Either Saunders or Minch indicated to Coy that they had tape recordings and handwritten notes relevant to the grievance.  *Id.* ¶ 59.[2]

Coy spent the next day interviewing witnesses at the plant.  Coy Dec. ¶ 60. He spoke with four or five individuals, including Union members and Company representatives.  At the conclusion of all of the interviews, Coy believed that the weight of the evidence was against Saunders, but he wanted to review the tapes and notes mentioned by Saunders before making a final decision.  *Id.* ¶ 61.

Coy left a message for Minch on April 14th and again on April 19th regarding the notes and tapes.  Coy Dec. ¶¶ 62-63.  Coy testified that Minch told him on April 20th that the items should be sent out in the next few days.  *Id.* ¶ 64. On April 27th, Coy left a third message with Minch requesting the items.  *Id.* ¶ 65. On May 3rd, Coy spoke with Minch to remind him that the notes and tapes had not yet been received.  *Id.* ¶ 66.  Coy testified that he gave Minch until May 7th to submit the information.  *Id.*[3]  The next time Coy heard from Minch was by correspondence dated May 17, 2004, after Saunders' grievance had been settled. *Id.* ¶ 67, Ex. 24.

---

[2] Coy testified that Saunders agreed to mail him copies of the notes and tape recordings before Coy met with GM representatives.  Saunders claims that Coy never disclosed a timeline for meeting with GM or resolving his grievance, but he has not cited any evidentiary support for this assertion.

[3]Minch and Saunders again deny that they were given a deadline to submit these materials but they have not offered any evidence to support this assertion.

Coy met with GM representatives and settled Saunders' grievance on May 13, 2004.  Coy Dec. ¶ 70, Ex. 25.  Under the terms of the settlement, Saunders' discharge was rescinded and converted into a leave of absence without pay and then retirement after February 1, 2002.  Coy Dec. Ex. 26.  Coy testified that he did not believe he could win Saunders' grievance in an arbitration hearing before an impartial umpire.  Coy Dec. ¶ 68.  Coy cited GM's expressed concerns about guns and workplace violence, Saunders' lack of corroborating witnesses, and Saunders' criminal history and history of combative behavior at work as reasons in favor of settling the grievance.  He also considered that Saunders would not be entitled to retiree health insurance benefits if he were treated as terminated, as opposed to retired.  See Coy Dec. ¶ 72, Ex. 3 (UAW's Supplemental Agreement, Art. III, § 7).

UAW notified Saunders by letter on May 19th that his grievance had been settled.  Pl. Ex. 2.  On July 23, 2004, UAW wrote Saunders asking him to contact Local Union officials to arrange the processing of his retirement papers.  Pl. Ex. 3.

On October 19, 2004, Saunders petitioned the court to reopen his lawsuit against UAW.  The court reopened the matter on October 25, 2004.  See Docket No. 23.  Saunders contends that he now has exhausted all of his administrative remedies and that UAW breached its duty of fair representation in handling his grievance.  UAW disagrees on both points and has moved for summary judgment.

*Discussion*

I.    *Failure to Exhaust Union's Internal Appeal Procedures*

Saunders brings his suit against the UAW pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  Ordinarily, a union member must exhaust a union's internal appeal procedures before bringing suit under section 301.  See *Clayton v. UAW*, 451 U.S. 679, 681 (1981); *Arnold v. United Mine Workers of America*, 293 F.3d 977, 978 (7th Cir. 2002).  The undisputed evidence shows that Saunders failed to exhaust UAW's internal procedures for appealing Coy's settlement of his grievance.

The UAW Constitution establishes a Public Review Board ("PRB") comprised entirely of persons independent of UAW.  Klein Dec. ¶¶ 2, 5.  If a Local Union member is dissatisfied with the Union's handling of his grievance, Article 33 of the Constitution gives the member the right to appeal to the PRB.  *Id.* ¶ 7.  The PRB has the authority to award money damages and back pay to the member.  It also can require the Union to reinstate the grievance and process it through the collective bargaining agreement's grievance procedure.  *Id.* ¶ 8.  According to a Letter of Understanding between UAW and GM, where the International Union (through the PRB or other specified entities) has reviewed the disposition of a grievance and found that it was handled improperly, it may reinstate the grievance at the point in the grievance procedure at which it was originally disposed.  Coy Dec. ¶ 21, Ex. 2.

Saunders' own evidence demonstrates his awareness of the intra-union appeal process.  In early 2001, Saunders appealed a grievance to the International Executive Board pursuant to Article 33 of the UAW Constitution.  See Pl. Ex. 16.

The exhaustion requirement is flexible, however, and courts have discretion in deciding whether to excuse exhaustion in a particular case.  *Clayton*, 451 U.S. at 689; *Arnold*, 293 F.3d at 979-81 (district court's refusal to excuse plaintiffs' failure to initiate first-level appeal required by union's constitution was not abuse of discretion).  In deciding whether exhaustion would be futile, the court typically considers three factors:  first, whether union officials are so hostile that the member could not hope to obtain a fair hearing on his claim; second, whether the union's appeal procedures could result in either complete relief or reactivation of the member's grievance; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.  *Clayton*, 451 U.S. at 689; *Arnold*, 293 F.3d at 980. The presence of any one of these factors may excuse the employee's failure to exhaust union procedures.  *Id.*

UAW contends that, through its appeal procedures, Saunders' grievance could have been reactivated for processing up to and including arbitration.  Cf. *Clayton*, 451 U.S. at 691 (plaintiff's failure to appeal union's withdrawal of grievance did not bar suit where plaintiff learned of withdrawal after period of time

in which union could have obtained arbitration).  Saunders does not dispute this point.

Instead, Saunders argues that he should be excused from exhausting the Union's appeal procedures.  In support of his argument, Saunders discusses the same evidence that he has cited for his claim on the merits.  Saunders contends that, throughout the grievance process, Coy was unresponsive and uncooperative and the Local Union refused to have any contact with him.  He points out that Coy waited over two years from the time he was appointed to meet with him until he performed an investigation at the plant.  Saunders argues that Coy pursued his grievance only when faced with the threat of this litigation.

Even assuming the truth of these allegations, Saunders' evidence and argument are confined to his experiences in the initial grievance process. Saunders has not offered any evidence indicating that he would experience similar difficulties with the later stages of the Union appeal process.  First, he has presented no evidence demonstrating that an appeal to the PRB or other independent entity would unreasonably delay his opportunity for a judicial hearing.  See *Nanney v. Chrysler Corp.*, 600 F. Supp. 1248, 1253 (D. Del. 1984) (granting summary judgment for employer because plaintiff's arguments about delays experienced during grievance and arbitration stages did not justify failure to exhaust UAW's intra-union appeals process).  Similarly, he has presented no evidence that the Union officials at these higher levels would be hostile or biased

-14-

against his claim.  *E.g.*, *Arnold*, 293 F.3d at 980-81 (plaintiff's evidence that union's general counsel made hostile remark and that union executive was potentially hostile did not demonstrate hostility so pervasive that plaintiff could not hope to receive fair hearing on appeal where the former was not involved in appeal process and the latter was part of an eleven-person appeals board); *see also Hammer v. UAW*, 178 F.3d 856, 858 (7th Cir. 1999) ("It is well-settled . . . that a plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process.").

"As long as the intra-union appeals process could result in the reinstatement of a grievance, thus bringing it back within the framework of the collectively negotiated procedure for settling contract disputes, final resolution of the employee's contractual grievance is possible through the preferred private means."  *Miller v. General Motors Corp.*, 675 F.2d 146, 149 (7th Cir. 1982) (affirming summary judgment in favor of union and employer where plaintiff had failed to exhaust procedure outlined in UAW–GM Letter of Agreement that provided for reinstatement of grievances).  Because Saunders has not identified any circumstances that would excuse his failure to exhaust UAW's internal appeal procedures before filing suit, the UAW is entitled to summary judgment on his section 301 claim.

II.     *Union's Duty of Fair Representation*

The UAW also is entitled to judgment as a matter of law for the independent reason that no reasonable jury could conclude that UAW's actions in handling Saunders' grievance amounted to a breach of the union's duty of fair representation.

A union breaches its duty of fair representation if its actions are either arbitrary, discriminatory, or in bad faith.  *Air Line Pilots Ass'n, International v. O'Neill*, 499 U.S. 65, 67 (1991); *Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 369 (7th Cir. 2003).  The inquiry into arbitrariness is an objective one, while the determination of whether a union's actions were discriminatory or in bad faith is subjective and looks to whether the union acted with an improper motive.  *Neal*, 349 F.3d at 369.

Saunders' criticisms of UAW are all accusations of arbitrariness and bad faith.  Saunders points out that he was not kept informed of the status of his grievance throughout the protracted grievance process.  He claims that Coy was difficult to reach, did not disclose that he was acting on behalf of UAW, was not cooperative, interviewed him only once, and conducted a cursory investigation.  Saunders also disagrees with Coy's reasons for settling his grievance.  He disputes the characterization of his prior bad conduct and criminal history and complains that he was not provided with certified documentation of his employment history.

-16-

Finally, Saunders contends that he was harassed by union officials and ordered not to enter the Local Union hall after he was fired.

First, to the extent that Saunders' complaints allege any harassment or perceived hostility by the Local Union, Saunders may not rely on the actions of those persons in his suit against UAW, the International Union. See *Reed v. UAW*, 945 F.2d 198, 203-04 (7th Cir. 1991) (plaintiff's allegation that local union official was hostile could not be imputed to International Union or other locals where there was no showing that those defendants had "instigated, supported, ratified, or encouraged" the wrongful conduct), quoting *Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 218 (1979).

With respect to the International Union that is the defendant in this case, Saunders' evidence does not demonstrate that Coy or any other Union official acted in bad faith. Saunders has offered no evidence indicating that Coy handled his grievance with an improper motive. Rather, the undisputed evidence shows that Coy considered the totality of the circumstances in deciding to settle Saunders' grievance and even arranged for Saunders to keep his retiree health benefits.

The undisputed evidence also shows that Coy did not process Saunders' grievance arbitrarily or in a perfunctory manner. A review of a union's actions for arbitrariness is highly deferential and recognizes that union negotiators need wide

latitude to perform their bargaining responsibilities effectively. *Air Line Pilots*, 499 U.S. at 78. A union's actions will be deemed arbitrary only if they are so far outside a wide range of reasonableness as to be irrational. *Id.* (union's decision to settle dispute on behalf of striking pilots was not arbitrary even though, in retrospect, settlement might have left pilots worse off than if they had unilaterally terminated strike and surrendered to employer); see also *Neal*, 349 F.3d at 370 (union's possible negligence in failing to ensure that members submitted timely grievance request forms did not breach fiduciary duty); cf. *Vencl v. International Union of Operating Engineers, Local 18*, 137 F.3d 420, 426 (6th Cir. 1998) (absent justification or excuse, union's own failure to timely pursue grievance on behalf of a member can constitute arbitrariness), cited by *Neal*, 349 F.3d at 370.

The Seventh Circuit has summarized a union's responsibilities in handling member grievances as follows:

> Insofar as grievances are concerned, "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca*, 386 U.S. at 191. "The union must provide 'some minimal investigation of employee grievances.'" *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995), quoting *Castelli v. Douglas Aircraft Co.*, 752 F.2d 1480, 1483 (9th Cir. 1985). "[B]ut the thoroughness of this investigation depends on the particular case, and 'only an egregious disregard for the union members' rights constitutes a breach of the union's duty.'" *Garcia*, 58 F.3d at 1176, quoting *Castelli*; *see also Vaca*, 386 U.S. at 194-95; *McLeod*, 258 F.3d at 613; *Filippo*, 141 F.3d at 749. The union is not obliged to take all member grievances to arbitration. *Vaca*, 386 U.S. at 191; *Reed v. International Union of UAW*, 945 F.2d 198, 202-03 (7th Cir. 1991). Rather, it has discretion to act in consideration of such factors as the wise allocation of its own resources, its relationship with other employees, and its relationship with the employer. *Rupe v. Spector Freight Sys., Inc.*, 679 F.2d 685, 691 (7th Cir. 1982); *see also Reed*, 945 F.2d at 203.

*Neal*, 349 F.3d at 369.

Saunders argues that Coy's inexplicable delay in processing his grievance demonstrates arbitrariness.  Paragraph 77 of the UAW–GM collective bargaining agreement states "it is important that complaints regarding unjust or discriminatory layoffs or discharges be handled promptly according to the Grievance Procedure."  Pl. Ex. 10.  Saunders claims that the two-year delay before his grievance was settled caused him immense financial hardship in the form of lost wages.

No reasonable jury could conclude that UAW's actions were so far outside the wide range of reasonableness as to be irrational.  It is undisputed that the Union advanced Saunders' grievance through the appropriate steps in the grievance procedure.  The delay in the process at step four, while not explained by UAW, did not ultimately result in any prejudice to Saunders.  See *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995) (plaintiff must establish both that union acted arbitrarily and that he was harmed by union's actions); see also *Ryan v. General Motors Corp.*, 929 F.2d 1105, 1109 (6th Cir. 1989) (union's alleged two-year delay in notifying member about withdrawal of grievance did not amount to breach of duty where no prejudice resulted); cf. *Vencl*, 137 F.3d at 426 (union violated duty of fair representation by failing to make timely request for arbitration that was then foreclosed).  In addition, courts have held that a union's failure to keep a grievant informed of the status of his

grievance is not, standing alone, a breach of the duty of fair representation.  See *Lettis v. U.S. Postal Service*, 39 F. Supp. 2d 181, 197 (E.D.N.Y. 1998), citing *Caputo v. National Association of Letter Carriers,* 730 F. Supp. 1221, 1230 (E.D.N.Y. 1990), citing in turn *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1975).  Simple negligence on the part of Coy or UAW is not sufficient to establish breach of fiduciary duty.  *Neal*, 349 F.3d at 370.

In addition, Saunders has not presented evidence that would allow a reasonable jury to find that Coy's reasons for settling his grievance were arbitrary.  Saunders cannot dispute that Coy conducted an investigation and interviewed witnesses who did not support his account of the events.  Saunders also cannot dispute that Coy spoke with several witnesses who in fact corroborated GM's account.  See Coy Dec. ¶ 60.  Although a union may not ignore a meritorious grievance, it is not obliged to take every grievance all the way to arbitration.  See *McKelvin v. E.J. Brach Corp.*, 124 F.3d 864, 867-68 (7th Cir. 1997) ("so long as a colorable argument could be made at the time of the union's decision to drop its support that the grievance is meritless . . . the decision cannot be regarded as arbitrary"), quoting *Trnka v. Local Union No. 688*, 30 F.3d 60, 61 (7th Cir. 1994).

Finally, Coy did not act unreasonably or in bad faith by concluding that Saunders posed a potential threat to the safety of other GM employees.  Saunders testified that he had owned guns his entire life and at the time of his termination.  Saunders Dep. at 52-53.  He had previous arrests for assault, battery, and sexual

battery.  He once (accidentally) shot an individual trespassing on his property.  *Id.* at 53-57.  Coy was aware that Saunders had been cited several times and even discharged for violating GM shop rules relating to fighting, threatening, and arguing with co-workers and supervisors.  Coy Dec. ¶ 68.  Regardless of the individual circumstances surrounding each of these events, it is undisputed that the Union had ample indications that both Saunders' employment history and his personal history were marked by violence.  As the Union representative responsible for the welfare of all members, Coy could properly consider this evidence in deciding to settle Saunders' grievance.

*Conclusion*

Saunders has not shown that the court should excuse his failure to exhaust internal union appeal procedures before filing this section 301 suit.  In addition, Saunders has not presented evidence sufficient for a jury to find that UAW's handling of his grievance was arbitrary, discriminatory, or in bad faith.  For each of these reasons, defendant UAW's motion for summary judgment (Docket No. 50) is granted.  Final judgment shall be entered accordingly.

So ordered.

Date: July 11, 2006

DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

Kimberly Denise Jeselskis
MACEY SWANSON AND ALLMAN
kjeselskis@maceylaw.com

Barry A. Macey
MACEY SWANSON AND ALLMAN
bmacey@maceylaw.com

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com